JOHN JACO,                           )
                                     )
                                     )
        Plaintiff-Appellant,         )
                                     )
                                     ) Appeal No. 01A01-9806-CH-00324
vs.                                  )
                                     ) Davidson Chancery
                                     )
DEPARTMENT OF HEALTH,                )
BUREAU OF TENNCARE                   )
                                     )
                                     )
        Defendant-Appellee.          )
                                     )

FILED

March 31, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

APPEALED FROM THE CHANCERY COURT FOR DAVIDSON COUNTY AT NASHVILLE, TENNESSEE.

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

THOMAS F. BLOOM,  for Plaintiff-Appellant

PAUL G. SUMMERS, ATTORNEY GENERAL & REPORTER, and MICHELLE HOHNKE JOSS, ASSISTANT ATTORNEY GENERAL, for Defendant-Appellee.

## AFFIRMED AND REMANDED

DON T. McMURRAY, JUDGE

CONCUR:
GODDARD, P.J.
FRANKS, J.

This is an appeal from a chancery court order affirming a final order from an administrative hearing. Appellant John Jaco appeals the order denying his application for Medicaid reimbursement for inpatient nursing home care after the Davidson County Chancery Court concluded that the record contained substantial and material evidence to support the Department of Health's ("Department") decision to deny Medicaid reimbursement.

The procedural history of this case is quite lengthy because it includes both administrative hearings and judicial review of those hearings during a five-year period. Appellant was admitted to Parkview Convalescent Unit ("Parkview"), an intermediate care facility (ICF), in Dyersburg, Tennessee on March 9, 1992. He received approval for short-term Medicaid reimbursement from April 14, 1992 to February 13, 1993 for nursing home care of a fractured hip. On February 8, 1993, appellant filed another pre-admission evaluation (PAE), a requirement for Medicaid payment of nursing home care, for continued Medicaid reimbursement, but the Department denied this PAE on March 30, 1993. On April 29, 1993, the Department was notified of an appeal by the appellant's brother, Harold Jaco, Jr., on behalf of the appellant.

On June 15, 1993, Administrative Law Judge (ALJ) Robert T. McGowan conducted a hearing and on July 12, 1993 entered an initial order affirming the Department's denial of appellant's PAE. Pursuant to Tennessee Code Annotated § 4-5-317(a), appellant requested reconsideration of the initial order, but the petition for reconsideration was denied by the ALJ pursuant to Tennessee Code Annotated § 4-5-317(c). The appellant then appealed the initial order. Dr. Kerry Gateley, sitting as Designee of the Commissioner of Health ("Designee"), entered a final administrative order on November 16, 1993 affirming the ALJ's decision denying appellant Medicaid reimbursement for inpatient nursing home care.

2

Appellant then filed a petition for reconsideration. Harold Jaco, Jr., the appellant's brother and his representative at the administrative hearing, stated that he was not competent to represent the appellant at that earlier hearing and that he had evidence not introduced at the hearing which could have a bearing on the final outcome of his brother's case. The Designee stayed his November 16th order and remanded the case to the ALJ to consider this new evidence. The appellant retained counsel to represent him in the proceeding on remand.

On remand, the parties agreed to submit the evidence in the form of affidavits. On July 22, 1994, the ALJ then entered a second initial order denying appellant's request for Medicaid reimbursement of nursing home care. The appellant filed a petition for reconsideration, and the petition was denied. The appellant then appealed the second initial order. On November 21, 1994, the Designee filed a final order affirming the denial of Medicaid reimbursement.

On January 18, 1995, appellant filed a petition for judicial review pursuant to Tennessee Code Annotated § 4-5-322.[1] The trial court entered an order affirming the final order of the Department on June 4, 1998.

Although the appellant presents three issues in his brief for our consideration, he consolidates these into one issue for his argument:

> The decision of the administrative law judge, as affirmed by the chancellor is arbitrary and capricious and not supported by substantial and material evidence, and the chancellor further erred by failing to consider the expert evidence submitted by petitioner and in deferring to inappropriate "credibility" assessments dealing with proof by affidavit.

We affirm the chancery court's order in its entirety.

At the time of the 1993 administrative hearing, the appellant was 48

---

[1]
Litigation of a procedural issue caused the delay from 1995 to 1998. *See Jaco v. Department of Health, Bureau of Medicaid*, 950 S.W.2d 350 (Tenn. 1997).

years old and had resided at Parkview in Dyersburg, Tennessee since March 9, 1992. Before his admittance to Parkview, he had resided at Maplewood Health Care in Jackson, Tennessee since 1988. According to the record, the appellant was approved for Medicaid reimbursement at Parkview from April 14, 1992 to February 13, 1993 because of his fractured hip. He was granted approval for short-term Medicaid reimbursement of his nursing home care so that he could learn to self-transfer from his wheelchair to his bed and from his wheelchair to the toilet without putting weight on his right leg. The appellant submitted another PAE for Medicaid reimbursement on February 8, 1993, but the Department denied the PAE because the appellant was capable of self-transferring. The Department's denial of the February 8th PAE is the subject of this action.

The appellant's medical diagnosis while at Parkview was a fractured right hip and seizure disorder. The appellant, who has had this seizure disorder as a result of a closed head injury from playing football since the age of nine, experiences between two and ten small seizures per week and has approximately nine to twelve severe seizures per year. He takes several medications daily in an attempt to control his seizures.

According to the record, the appellant, who has a twelfth-grade education, worked in his father's grocery store and a vocational training center from 1967-1980. He apparently lived at his parents' home until 1988. He resided at Rosewood Garden Boarding Home for three months in 1988 before being admitted to Maplewood Health Care in Jackson, Tennessee and then to Parkview in March 1992.

The appellant argues that he qualifies for Medicaid reimbursement of daily inpatient nursing home care because of his seizure disorder. He asserts that Joanna Damons, a registered nurse with the Medicaid Medical Review Unit at the Bureau of TennCare who reviews PAEs for Medicaid approval of nursing home care,

4

testified that she considers (1) the patient's orientation or mental condition, (2) the patient's ability to move around on his own, and (3) his ability to perform activities of daily living (ADLs) when deciding whether the patient needs inpatient nursing home care.

With respect to his mental condition, the appellant argues that the ALJ relied heavily upon the affidavit of Dr. John Gore, the Medical Director of the TennCare/Medicaid Program. He asserts that Dr. Gore, who is a pediatrician, was "not qualified to dispute the conclusions of Doctor Berryman, a clinical psychologist, and Doctor Hubbert, a psychiatrist, regarding [his] mental state." The appellant maintains that Dr. Gore is not qualified to assess his mental condition, and thus, his testimony on this subject "is of negligible value." Appellant provided affidavits from Dr. Harry Berryman and Dr. Charles Hubbert stating that he needed inpatient nursing home care because of his seizures. Furthermore, he contends that the Davidson County Chancery Court should have considered Dr. Gore's affidavit and his experts' affidavits "*de novo*, without any deference to how the ALJ (or the Chancellor) may [have] assessed the the [sic] 'credibility' of the documentary evidence."

Furthermore, the appellant asserts that he requires supervision and assistance with his ADLs. Dr. Gore stated that the appellant receives minimal assistance with his ADLs, adding that the appellant bathes, dresses, and feeds himself. Appellant argues, however, that he "would be in real danger of drowning if he were left unsupervised in the bath," noting that he had experienced a seizure while in the whirlpool bath. In addition, he contends that he needs supervision when taking his medications, especially following a seizure when he tends to become confused.

The appellant's brother, Harold Jaco, Jr., has paid for his brother's nursing home care, which costs approximately $21,000 per year, since 1988. Therefore, the appellant states that he seeks to "shift the financial burden of [his]

5

nursing home care from the back of [his] brother to the rightful obligor, the Bureau of Medicaid."

The Department argues that the appellant does not require daily inpatient nursing home care, and therefore, Medicaid reimbursement for his nursing home care was properly denied. First, the Department asserts that Dr. Gore is the most qualified person to evaluate the appellant's needs. As a board-certified physician and the Medical Director of TennCare/Medicaid Program, Dr. Gore is "an expert on where medical needs can best be met and what opportunities for care are available." It notes that Dr. Gore observed the appellant at Parkview, whereas Dr. Berryman and Dr. Hubbert saw the appellant only at their offices for evaluation and testing. Therefore, the Department contends that the information used by Drs. Berryman and Hubbert may not be the most reliable because they did not see the appellant in his home environment as Dr. Gore did. Furthermore, the Department argues that Drs. Berryman and Hubbert did not interview the nurses who care for the appellant, but instead talked only with the appellant and his brother, Harold Jaco, Jr., who has an interest in maintaining the appellant in the nursing home. The Department also notes that neither Dr. Berryman nor Dr. Hubbert reviewed the appellant's medical records.

In addition, Joanna Damons testified that during her on-site visit with the appellant, he could communicate his needs and knew what he was doing. She also testified that based on her interviews with four nurses who care for the appellant, the appellant "is alert and oriented most of the time." Ms. Damons further testified that although the appellant was unable to walk, he can use a wheelchair without assistance, and during her on-site visit, appellant self-evacuated from the facility in only 40 seconds. With respect to appellant's ADLs, she testified that appellant feeds himself, uses the bathroom independently, and requires only set up for bath and mouth care. Furthermore, he can take his medications with only minor assistance, but does need

6

limited supervision in taking his medications following a seizure.

As to the appellant's seizure disorder, Ms. Damons testified that the general method for handling someone who is having a seizure is to turn the person on his or her side so that they do not aspirate. She further testified that this procedure could be performed by a layperson, and in fact, the appellant's mother had performed this function for him when she cared for him at home. Ms. Damons testified that the nursing staff at Parkview does nothing for the appellant's seizure disorder which would require daily inpatient nursing care. She stated that the facility calls the doctor is the appellant has a major seizure and that a layperson could call the doctor. Ms. Dammons further testified that boarding homes in Nashville and Jackson care for patients who have seizures and that inpatient nursing home care would not prevent the appellant's seizures or prevent him from being injured during a seizure.

While the Department concedes that the appellant needs some supervision and monitoring, it maintains that his needs can be met at a lower level of care, such as at a residential home for the aged or in a home setting with a home health nurse, instead of as an inpatient at a nursing home.

Therefore, the Department requests that the chancery court's order upholding the Department's final order be affirmed because there is substantial and material evidence in the record to support the Department's denial of Medicaid reimbursement for the appellant's nursing home care.

The Department is the state agency responsible for administering the Medicaid program in Tennessee. *See* Tenn. Code Ann. § 71-5-104. Tennessee Code Annotated § 4-5-322(a)(1) states that any person who is aggrieved by a final decision in a contested case has the right of judicial review. Judicial review is without a jury and is not a *de novo* review but is limited to the record. Tenn. Code Ann. § 4-5-322(g); *Humana of Tennessee v. Tennessee Health Facilities Commission*, 551

7

S.W.2d 664, 667 (Tenn. 1977). However, proof may be heard in the trial court for "alleged irregularities in procedure before the agency, not shown in the record." Tenn. Code Ann. § 4-5-322(g). The factual issues must be reviewed by the Chancellor upon a standard of substantial and material evidence. *Humana of Tennessee*, 551 S.W.2d at 667.

Nursing home care at an ICF is one service available to individuals who meet the requirements for such care under Medicaid. Tenn. Code Ann. § 71-5-107(a)(15). To reimburse through Medicaid for ICF services, the Department must approve a PAE on behalf of an individual. Tenn. Comp. R. & Regs. ch. 1200-13-1-.10(2).

The requirements for Medicaid reimbursement for care at an ICF after admission follow:

> In order to continue receiving Medicaid reimbursement for ICF care after admission, an individual must, at all times, meet all of the following criteria:
>
> (a) Either physical or mental condition; and,
> (b) Social disability; and,
> (c) Medical necessity; and
> (d) Need inpatient nursing care daily; and,
> (e) Need care under the direction of a physician.

Tenn. Comp. R. & Regs. ch. 1200-13-1-.10(4).

"Inpatient nursing care needed" is defined as "[n]ursing [s]ervices must be such that as a practical matter they can only be rendered on an inpatient basis or it is the general medical practice that they be rendered only on an inpatient basis." Tenn. Comp. R. & Regs. ch. 1200-13-1-.10(1)(b).

First, we disagree with the appellant's assertion that *de novo* review was required by the chancery court. As we have already noted, the chancery court is limited to the record made at the administrative hearing, with the exception of proof of

8

procedural irregularities. Therefore, the appellant's assertion regarding *de novo* review is without merit.

With respect to the appellant's application for Medicaid reimbursement of his nursing home care, we note that the record indicates the appellant began filing PAEs for Medicaid reimbursement of nursing home services from the time he was first admitted to Maplewood Health Care in 1988. From that time until 1992 when he fractured his hip, he had filed numerous PAEs requesting Medicaid reimbursement for his nursing home care, and all requests for reimbursement had been denied. However, once appellant fractured his hip, he received approval for *short-term* Medicaid reimbursement so that the nursing home staff could work with him to develop skills necessary for coping with his fractured hip. However, once at Parkview for his hip fracture, appellant argued that he was entitled to Medicaid reimbursement for his nursing home care because of his seizure disorder. Absolutely nothing in the record indicates that the appellant was admitted to Parkview because of his seizure disorder alone or that he was approved for *short-term* Medicaid reimbursement because of his seizure disorder.

Based upon the record, the appellant is fully cognizant of his surroundings, can care for his daily personal needs with only minor assistance, and can move about in his wheelchair without assistance. Evidence indicates that the appellant can take his medications with minimal assistance and that the nurses at Parkview do not perform any function for the appellant during a seizure that a layperson could not perform or has not performed. The appellant was cared for by his mother at home and lived at a boarding home before being admitted to Maplewood Health Care in 1988. Furthermore, the record indicates that individuals who experience seizures are often cared for in residential facilities other than nursing homes.

We conclude that there is substantial and material evidence in the record to support the Department's determination that appellant does not qualify for Medicaid reimbursement of inpatient nursing home care.

Therefore, we affirm the order of the Davidson County Chancery Court in its entirety. Costs of this appeal are taxed to the appellant, and this case is remanded to the chancery court for the enforcement of its order and collection of costs.

**PER CURIUM ORDER**

The foregoing opinion, prepared by Judge Don T. McMurray, late member of the Court and now deceased, is now approved and adopted as the opinion of the Court.

_____
Houston M. Goddard, Presiding Judge

_____
Herschel P. Franks, Judge